### THE M. MORAN.

(Circuit Court of Appeals, Second Circuit. April 24, 1918.)

No. 227.

1. COLLISION ⊙⇒58—TUGS—SUPERIOR RIGHTS OF.

A tug towing a sailing schooner has no superior rights to a tug in charge of an ordinary tow of barges; the relation of the two being steam to steam, regardless of any superior rights of a sailing vessel.

2. COLLISION ⊙⇒60—SAILING AND STEAM VESSELS—NEGLIGENCE.

Where a sailing schooner, which had cast off from the tug having it in tow began to sail, while another tug in charge of a tow was lengthening hawsers about 500 feet away, the schooner, despite the privilege of a sailing vessel, was not warranted in crossing or approaching the hawser, there being plenty of room on the other side; and so, where a collision resulted from the act of the schooner in making a tack toward the tug, the schooner must be held solely at fault.

Appeal from the District Court of the United States for the Eastern District of New York.

Libel by Timothy O'Connell against the steam tug M. Moran, her engines, etc., claimed by the Moran Towing & Transportation Company. From a decree for libelant, claimant appeals. Reversed and remanded, with directions to dismiss the libel.

On a fair summer afternoon, with the tide ebb and a light south southwest wind (barely enough to give a sailing vessel steerage way), the small schooner Oakwoods went down Buttermilk Channel in tow of a tug. At the same time the tug Moran, with two scows on a steel towing hawser, also passed through the Channel. Not far from the lower end of Governor's Island the Moran stopped to lengthen hawsers, as she was bound to sea. The Oakwoods and her tug were nearer the Brooklyn shore than the Moran and when off the

bell buoy below Governor's Island she cast off from the tug and began to sail, admittedly on the port tack. Thereafter she came about on the starboard tack, and her port bow then came in collision with the forward starboard corner of the starboard scow in the Moran's tow. Unless hindered by the Moran and her scows, there was nothing in the Oakwoods' path requiring her to go about when she did. The schooner was injured by collision, and brought this suit, alleging as fault that the Moran overtook the schooner and stopped to lengthen hawsers across the bow of the Oakwoods. The trial court found the Moran "at fault for creating the situation out of which the collision arose," and gave decree for libelant. Claimant brought this appeal.

Park & Mattison, of New York City (Samuel Park, of New York City, of counsel), for appellant.

Foley & Martin, of New York City (William J. Martin and George V. A. McCloskey, both of New York City, of counsel), for appellee.

Before WARD, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] That the course of the Oakwoods while in tow was considerably nearer Brooklyn than that of the Moran is admitted, and that the tug pulling the schooner traveled much faster than the heavy tow of the Moran is proven. The two tugs bore to each other the relation of steam to steam, and while in tow the Oakwoods had no claim whatever to the superior rights of a sailing vessel.

[2] Therefore the crucial question in this case is: Where was the Moran and her tow, and what were they doing, when the Oakwoods cast off and began to sail? On this point there is a flat contradiction in the evidence; the schooner maintaining that the Moran was 1,000 feet astern at the time, and the Moran that the Oakwoods began to sail at a point 400 or 500 feet to the port or Brooklyn side of the tow and while the tug master was in the act of lengthening hawser. We resolve this contest by consideration of some matters either admitted or definitely found by the trial judge.

Confessedly there was a time when the Oakwoods on her port tack was heading for the Moran's hawser; she declares that she came about to avoid fouling that hawser, yet after so doing she admittedly struck the starboard scow with her port bow. This difficult, if not impossible, performance is sought to be accounted for by saying that the scows sheered toward Brooklyn, so as to present the one to starboard to the swinging schooner. If this happened, it could only have occurred by the Oakwoods tacking directly in front of the scows. But the lower court found that the Moran let her steel hawser run out and sink, and the Oakwoods passed entirely over it. We see no reason to doubt this finding, and it follows therefrom that whatever danger the schooner apprehended from the hawser was avoided by the skillful action of the Moran's master, and the Oakwoods had no excuse for going about where she did and failing to beat out her tack.

The direct evidence as to the respective positions of Moran and schooner, when the latter cast off, inclines us to adopt the former's version; but when it is observed that the charge against the Moran is not only of gross, but silly negligence, and that the reason for coming about assigned by the Oakwoods is taken away by the finding of

the trial court, we find the fact to be that the Oakwoods began to sail, with the Moran lengthening hawsers about 500 feet away. Under such circumstances the schooner must show some justification for crossing or approaching the Moran's hawser. We find none; there was plenty of room for her on the Brooklyn side of the Moran, nor was she bound to go off on a port tack. So far from the Moran creating the situation of danger, we find that she was executing a lawful maneuver when the Oakwoods cast off, and the latter created her own danger by unnecessarily interfering with said maneuver. A sailing vessel's privilege does not extend to being towed close to a tug lengthening hawser, then resuming the privileged role, and complaining because the maneuver she could plainly see interfered with, not what she had to do, but what she preferred doing.

Decree reversed, and case remanded, with directions to dismiss libel, with costs in both courts.